[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Defendant Ernst Young moves for an order compelling plaintiff ShareAmerica, Inc. and plaintiff ShareAmerica Limited Partnership to produce documents that have been withheld from production. The ShareAmerica entities claim the documents are protected from disclosure by the attorney-client privilege and the work product rule. For the reasons stated below, the motion to compel is denied.
The parties have set forth the relevant facts in their legal briefs. In 1988, the ShareAmerica entities retained Ernst 
Young to audit ShareAmerica's financial statements. In August of 1990, Ernst Young resigned as independent auditors and withdrew its consent to the use of its name in connection with the financial statements. In 1993, ShareAmerica brought suit in this court against Ernst Young claiming that as a consequence of Ernst Young's actions ShareAmerica was not able to proceed with a public offering of stock. The ShareAmerica entities allege claims in negligence and breach of contract and seek over $5 million in damages.
The instant dispute arises out of a subpoena and notice of CT Page 2371 deposition that Ernst Young served on the Washington, D.C. law firm of Kirkpatrick Lockhart, LLP ("KL"). The Washington law firm served as counsel to ShareAmerica prior to and in connection with the planned public offering of stock in ShareAmerica, Inc. The subpoena and notice of deposition was issued by the District of Columbia Superior Court. After KL asserted the attorney-client privilege at ShareAmerica's request, the District of Columbia Superior Court ordered KL to produce all nonprivileged documents and to provide a privilege log containing information regarding each document withheld on the basis of privilege. KL thereafter produced non-privileged documents and a privilege log, which identified documents that its former clients, the ShareAmerica entities, claim are protected from disclosure. Ernst Young then filed in the District of Columbia Superior Court a motion to compel production of the documents that were identified as privileged. ShareAmerica opposed the motion to compel on the ground the issues raised by the motion should be addressed by a Connecticut court since the underlying action is pending here in Connecticut. The motion to compel was denied without prejudice. Ernst Young thereafter filed in this court a motion to compel.
There are approximately 800 documents identified in the privilege log. These documents were culled from a collection of documents contained in ten boxes.[1] In most instances, each of the approximately 800 documents is identified by number, a cryptic description, date, the maker of the document, and the person or entity to whom the document was directed. The documents are further identified with a Roman Numeral I, II, or III.[2]
These numerals stand for the following: I represents "Attorney-Client Privilege: Documents from client to attorney; " II represents "Attorney-Client Privilege: Documents from attorney to client; " and III represents "Attorney-Client Privilege and Work Product Doctrine: Attorney-prepared documents/Communications between attorneys."
Ernst Young argues that ShareAmerica has failed to explain the basis for many of its privilege claims. In the alternative, Ernst Young argues that the privileges have been waived (1) by ShareAmerica placing the information "at issue" in this litigation and (2) by voluntarily disclosing the information. The first issue is whether ShareAmerica has adequately explained the basis for its privilege claims.
ShareAmerica asserts the documents are protected by the CT Page 2372 attorney-client privilege and the work product rule. "The attorney-client privilege protects communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice." Ullman v. State, 230 Conn. 698, 711
(1994). "Not every communication between attorney and client falls within the privilege. A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice." Id. at 713. "The burden of proving the facts essential to the privilege is on the party asserting it."State v. Hanna, 150 Conn. 457, 466 (1963). "When the communication by the client is either made in or sent to the attorney's office, little factual foundation is ordinarily required, whereas less direct communications require a greater factual basis to establish the privilege." C. Tait J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 12.5.9
"The attorney's work product rule is not an evidentiary rule but a rule of discovery." C. Tait J. LaPlante, supra, § 12.5.11; see Practice Book §§ 219 and 773. "The work product rule protects an attorney's" `interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible items.' . . . `Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation.' . . ." Ullman v. State, supra at 714. "To be protected under this doctrine, the work of the attorney must be such that it forms an essential step in the procurement of data and must involve duties normally performed by attorneys.Stanley Works v. New Britain Redevelopment Agency, 155 Conn. 86,95, 230 A.2d 9 (1967)." Barksdale v. Harris, 30 Conn. App. 754,761 (1993). Under § 219 of the Practice Book, fact work product is subject to discovery upon a showing of "need" and "undue hardship" while opinion work product is protected from disclosure.
While the law is clear that the party asserting the attorney-client privilege has the burden of proving that the privilege applies, the law is not clear on what must be shown. Formalistic tests limiting the attorney-client privilege to officers and agents of a corporation who are in the "control group" have been rejected by various courts. See Upjohn Co. v. United States,449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); Shew v. Freedomof Information Commission, 44 Conn. App. 611, 618-621 (1997). The following questions appear to be relevant: Was the communication CT Page 2373 made for the purpose of facilitating the rendition of professional services to the corporation? Did the maker of the communication intend that it not be disclosed to persons other than those necessary for the furtherance of legal services to the corporation? Was the information treated as confidential within the corporation? Was the communication made or received by a person having authority to obtain legal services for the corporation or to act on advice thereby rendered on behalf of the corporation? Was the communication made or received by a corporate employee during the course of the person's employment and for the purpose of effecting legal representation of the corporation? Was the communication made or received by a lawyer representing the corporation or by a person employed by the lawyer to assist the lawyer in rendering professional legal services to the corporation?[3]
Where voluminous communications are memorialized, the parties must inform the court about the pertinent circumstances without disclosing the substance of the information sought to be protected. One means of providing information is by use of a privilege log and affidavits. The log can identify "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." In re GrandJury Investigation United States v. The Corporation,974 F.2d 1068, 1071 (9th Cir. 1992). A privilege log has been provided in this case.
The court has examined the privilege log. The court concludes that ShareAmerica has made a prima facie showing that the documents are protected by the attorney-client privilege and the work product rule.
Ernst Young claims that ShareAmerica has placed the non-disclosed information "at issue" and has thereby waived its right to claim the documents are protected by the attorney-client privilege or the work product rule. See Carrier v. The HomeInsurance Company, 6 Conn. L. Rptr. 478 (1972) (Shaller, J.) (at issue exception discussed but not applied). The "at issue" exception does not apply since the legal claims asserted by the parties have not made the non-disclosed communications and the legal effects thereof a direct subject of the parties' dispute. Accordingly, a waiver has not occurred under the "at issue" CT Page 2374 exception.
Ernst Young next claims that ShareAmerica's "disclosure of communications with and among attorneys from KL regarding the SEC's inquiry and the planned public offering constitutes a waiver of the attorney-client and work product privileges with respect to those documents and all other documents covering the same subject matter." (Defendant's brief dated 5/30/97 at p. 13). ShareAmerica, however, has submitted an affidavit from Attorney Daniel Shepro that shows the document production and testimony occurred without a waiver of ShareAmerica's privileges.
Finally, Ernst Young claims this court must review the non-disclosed documents in camera to evaluate the assertions of privilege. Ernst Young argues that "courts have routinely conducted inspections of documents claimed to be privileged. . . ." (Defendant's brief dated 7/7/97 at p. 9). While courts have conducted in camera inspections of documents, such inspections are not "routine." "It has been held that a party has no right to in camera inspection of documents where the opponent files an affidavit setting forth facts sufficient to justify a claim of privilege and there is no record basis for questioning the veracity of the affidavit, at least where the party seeking disclosure has had the opportunity to take discovery concerning its opponent's claims of privilege." Anno: "Attorney-Client Privilege", 27 A.L.R. 76, § 3[c], p. 107-08. The appropriateness of an in camera inspection of documents was discussed by the Ninth Circuit Court of Appeals in a case entitled In re Grand Jury Investigation United States v. TheCorporation, 974 F.2d 1068, 1073-75 (9th Cir. 1992). "The balance . . . between the intrusion on the privilege and the likelihood that the privilege may not apply justifies a . . . minimal threshold [showing] for in camera review when a party believes that the materials are not privileged. . . . [T]o empower the . . . court to review the disputed materials in camera, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged. If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the . . . court." Id. at 1074-75. In exercising its discretion, the court should consider the amount of material it is asked to review, the relevance of the alleged privileged material to the case, and the likelihood that in camera review will reveal evidence that the privilege does not apply. Id. at CT Page 2375 1072-75.
Ernst Young's mere assertions that non-privileged material exists does not meet the minimal threshold requirement for this court to consider in camera inspection. Even if it is assumed that Ernst Young has made a threshold showing, in camera inspection is still not appropriate under the circumstances.[4]
The motion to compel is denied. The court's ruling should not be construed as precluding Ernst Young from pursing discovery regarding circumstances that are relevant to ShareAmerica's privilege claims.
THIM, JUDGE